MARY W. EHRLICH, WILLIAM W. WILDE and THOMAS B. WILDE v. ARTHUR MITTELBERG et al.; ARTHUR MITTELBERG, Appellant.

Division Two, June 11, 1923.

1. **WILL CONTEST: Sufficient Petition: Interest in Estate: Right to Sue: Legal Conclusions.** Where the petition alleged that "plaintiffs are all the heirs" of testator; that "no one other than plaintiffs and defendants has any interest" in his estate; that "plaintiffs are the only children" of a deceased sister of testator, and that said testator "left no other brothers or sisters, or descendants of such brothers or sisters," although it did not allege that testator left no children or grandchildren or father or mother him surviving, it will not be held on appeal, in the absence of a demurrer or other objection to the petition at the trial, and in the presence of testimony, admitted without objection, that testator's only child died when a baby, that he was ninety-four years of age at his death and that his aged wife had died ten days previously, and in the presence of a recital in their joint will itself, introduced by defendants, to the effect that "we have no child or decendants of a child to be remembered in our will," that the petition did not contain sufficient allegations showing plaintiffs had such interest in his estate as entitled them to maintain a suit to have the will set aside on account of undue influence by the legatees and because of a lack of testamentary capacity; but under the circumstances it will be ruled that the defendants, after verdict for plaintiffs, are in no position on appeal or. by motion in arrest to attack the petition on the ground that it contained only legal conclusions.

2. ———: ———: ———: **Unchallenged Proof of Necessary Facts: Treated as Amended.** Where the facts which defendants insist should have been alleged in the petition were proven without objection and stood unchallenged at the trial, and no demurrer was offered or objection made to the petition at the trial, the appellate court will not treat the petition as void, even if it defectively states a cause of action, but, as plaintiffs would have been entitled to amend their petition at the trial to correspond to the facts proven, will treat it as having been properly amended to embrace said facts.

3. ———: **Parties.** If all the legatees and devisees are joined as defendants in the suit to set aside a will, it is not necessary that all

other persons who might be interested in the estate should be joined as plaintiffs.

4. ———: **Testamentary Capacity: Instruction: Comment on Evidence.** An instruction telling the jury that "if they believe and find from the evidence" that testator "was, at the time of the execution of the paper writing, if you find he did execute the same, afflicted with the diseases of chronic nephritis, uræmic poisoning, arterio-sclerosis, senile debility and carbuncleosis, and so completely prostrated in body and mind by the wasting effects of said diseases as to be unable to understand the business in which he was then engaged, then the jury are instructed to find that he was not of sound and disposing mind," is not to be commended, but in view of the undisputed facts, especially the testimony of proponents' principal witness that testator was afflicted as indicated in said instruction, proponents were not injured thereby, nor was any error materially affecting the merits of the case committed by giving it. ·

5. ———: ———: ———: **Waiver of Objection.** Appellants are in no position to complain of an instruction given for respondents, where they asked and induced the court to give another of the same meaning and language.

6. ———: **Undue Influence: Confidential Relation: Presumed.** An instruction telling the jury that, the evidence having established the existence of a confidential relation between the aged and infirm testator and the principal legatee, the law presumes that said will was the result of undue influence exercised over the testator by said legatee, and unless such presumption is overthrown by the evidence the jury must find against the will, is not error. ·

7. ———: **Confidential Relations: Shown by Will Itself.** In considering the evidence to establish the existence of a confidential relation between the aged and infirm testator and the principal legatee, who for ten years had been his friend and business adviser, who was not related to him by blood or marriage, and to whom the will gave all the personal property, and half the real estate, worth fifty thousand dollars, and made him trustee with power to sell the whole of it as he wished, and executor without bond, it is proper for the jury to consider the recitals of the will itself which speaks of said legatee as testator's "friend" in whom he reposed "absolute confidence" and "of his many years of constant care and unrequited attention to all of my business affairs.".

8. ———: **Practice: Demurrer to Evidence: Waiver.** Defendants in a will contest waive any error in the action of the court in overruling their demurrer to the evidence offered at the close of plaintiffs' case, by placing before the jury their own evidence, for then it becomes the duty of the jury to consider all the evidence in the case.

9. ———: **Substantial Evidence: Appellate Practice.** Where the peti-
tion charges that the purported will is void on two grounds, namely,
undue influence exercised by the principal legatee and lack of
testamentary capacity in testator to make a will, and the evidence
to support both grounds is substantial, the judgment for contest-
ants will not be reversed on appeal for lack of sufficient evidence
to support it; but there being no error in the instructions given,
and none in the admission or rejection of evidence, the judgment
will be affirmed.

Appeal from St. Louis County Circuit Court.—*Hon. John
W. McElhinney,* Judge.

Affirmed.

*Thos. B. Crews* and *George Barnett* for appellants.

(1)   The court erred in overruling defendant's mo-
tion in arrest of judgment.   The plaintiffs' petition is
fatally defective.   The petition does not contain allega-
tions showing the plaintiffs to be parties in interest and
entitled to prosecute this action.   The question of plain-
tiffs' right to sue is jurisdictional, and must be alleged
and proven.   If a sufficient allegation of the facts show-
ing plaintiffs' right to sue does not appear in the peti-
tion the petition is fatally defective.   A will contest is
a statutory proceeding, and plaintiffs must allege and
prove themselves strictly within the statutory right to
prosecute the action.   Plaintiffs failed to allege this es-
sential jurisdictional fact.   State ex rel. v. McQuillan,
246 Mo. 674; Gruender v. Frank, 267 Mo. 713; Hahn v.
Hammerstein, 272 Mo. 248; Chandler v. Railroad, 251
Mo. 592; 40 Cyc. 1268, note 22; 10 Ency. Plead. & Prac.
p. 503, and vol. 12, p. 1042; Moser v. Talman, 100 N. Y.
Supp. 231; Henieries v. Brandhohst, 59 How. Prac. 91;
Craig v. Welsh Hockley Coal Co., 74 S. W. 1097; Ste-
phanic v. Stephanic, 26 N. Y. Supp. 1039. (2) The court
erred in giving and reading to the jury, at the instance
and request of plaintiffs and over the objections and ex-
ceptions of defendants, instruction number seven, for the

following reasons: First, because the instruction specifically enumerated all of the diseases with which deceased, was shown by certain portions of the evidence to have been afflicted during his illness. The instruction thereby singled out for comment certain matters and gave then undue prominence. Andrew v. Linebaugh, 260 Mo. 623, 662; Hughes v. Rader, 183 Mo. 712; Costello v. Kansas City, 280 Mo. 576, 587; Rice v. Bridge & Transit Co., 216 S. W. 746, 753; Dungan v. Railroad Co., 178 Mo. App. 164; Lucks v. Savings Bank, 148 Mo. App. 382; Disbrow v. Peoples' Ice Storage & Fuel Co., 138 Mo. App. 60. Second, because the instruction was argumentative. It emphasized the wasting effects of certain enumerated diseases, and was in the nature of an argument, as to the effect of the wasting diseases mentioned. Rice v. Bridge & Transit Co., 216 S. W. 753. Third, because the instruction assumed to be true that the diseases mentioned and all of them were followed by wasting effects. This was a matter very much in dispute. The instruction was therefore erroneous. Moon v. Transit Co., 247 Mo. 237; Clark v. Railroad Co., 242 Mo. 609; Wease v. Tool Co., 187 Mo. App. 716; Stork v. Brygaman, 223 S. W. 946; Martin v. Woodlae, 226 S. W. 650. (3) The court erred in giving instruction number nine. The evidence was not sufficient to establish a confidential relationship between Arthur Mittelberg and Francis P. Wilkinson such as to create a presumption that the will was procured through undue influence and to shift the burden of proof to contestees that undue influence was not exerted. Spurr v. Spurr, 285 Mo. 163; Byrne v. Fulkerson, 254 Mo. 118; Hutsell v. Burris, 199 S. W. 149; Campbell v. Carlyle, 162 Mo. 634; Tibbe v. Kamp, 154 Mo. 545; Mayes v. Mayes, 235 S. W. 106. (4) The court erred in giving and reading to the jury at the instance and request of plaintiffs and over the objections and exceptions of defendant instruction number 10. There was no evidence showing the exercise of undue influence by the defendant Mittelberg over the mind of the testa-

tor.  Kuehn v. Ritter, 233 S. W. 5; Padgett v. Pence, 178 S. W. 205; Kleinlein v. Krauss, 209 S. W. 933.  (5)  The court erred in overruling defendants' instruction in the nature of a demurrer to the evidence offered by defend- ants at the close of plaintiffs' case.  The evidence failed to show that all the parties interested in the action were before the court.  A will contest is an action *in rem*, and the parties interested should have been before the court, either upon personal service or by an order of publica- tion.  This question as to the defect of parties can be raised at any stage of the proceedings.  The point is as good after as before verdict.  Eddie v. Parke's Exec- utor, 31 Mo. 513; Wells v. Wells, 144 Mo. 201.  (6)  The court erred in giving and reading to the jury at the instance and request of plaintiffs and over the objections and exceptions of defendants, instruction number six. There was no evidence showing a lack of testamentary capacity on the part of testator, and this issue should not have been submitted to the jury.  Hahn v. Ham- merstein, 272 Mo. 262; Gilowy v. Foster, 230 Mo. 131. (7)  The court erred in overruling the instruction offered by defendants in the nature of a demurrer to plaintiffs' evidence.  All of the evidence taken together discloses that the testator possessed testamentary capacity.  Hahn v. Hammerstein, 272 Mo. 262; Gilowy v. Foster, 230 Mo. 131.

*Arthur V. Lashly, Hans Wulff* and *Julian Laughlin* for respondents.

(1)  Only the devisees and legatees named in a will are necessary parties to a will contest.  R. S. 1919, sec. 525; Kischman v. Scott, 166 Mo. 214; Wattenbarger v. Payne, 162 Mo. App. 434; Spurr v. Spurr, 226 S. W. 40; Parke v. Smith, 211 S. W. 62.  (2)  The petition states a cause of action; especially after verdict.  R. S. 1919, sec. 1550; Machinery Co. v. Bottling Co., 273 Mo. 148; East St. Louis Ice & Cold Storage v. Kuhlman, 238 Mo.

702; 1 McQuillin on Pleading and Practice, secs. 470, 472; Bliss on Code Pleading, p. 834; Slaughter v. Slaughter, 106 Mo. App. 106; Hughes v. Carson, 90 Mo. 399; Hutzell v. Crewse, 138 Mo. 1; Lareau v. Lareau, 208 S. W. 241; Pinson v. Jones, 221 S. W. 86; Wissman v. Cornbelt Inv. Co., 209 S. W. 865; Bollmeyer v. Eagle Mill Elevator Co., 206 S. W. 917; Tebeau v. Ridge, 261 Mo. 559; Gruenden v. Frank, 267 Mo. 713; Winn v. Railroad, 245 Mo. 412; Hahn v. Hammerstein, 272 Mo. 248, 257; Cook v. Kerr, 192 S. W. 468; 31 Cyc. 726; Stonemets v. Head, 248 Mo. 243, 252; Jackson v. Railway, 80 Mo. 147; State ex rel. v. Delaney, 122 Mo. App. 243; Tucker v. Telephone Co., 132 Mo. App. 425; Cole v. Street Ry. Co., 133 Mo. App. 443; McIntyre v. Ins. Co., 142 Mo. App. 266; Sec. 303, R. S. 1919; Finer v. Nichols, 175 Mo. App. 525, 534; Hays v. Miller's Estate, 189 Mo. App. 77; Atwell v. Marceline Coal Mining Co., 180 S. W. 400. (3) The evidence was ample to warrant the giving of plaintiffs' instruction number 10, on undue influence. Byrnes v. Fulkerson, 254 Mo. 118; Mowry v. Norman, 204 Mo. 189; Ryan v. Rutledge, 187 S. W. 877; Kleiner v. Krause, 209 S. W. 936; Maddox v. Maddox, 114 Mo. 46; Dansman v. Rankin, 189 Mo. 677, 708; Carl v. Gabel, 120 Mo. 297; Roberts v. Bartlett, 190 Mo. 703; Wendling v. Bowden, 252 Mo. 687. (4) Confidential relationship was sufficiently established by the evidence to warrant the giving of plaintiffs' instruction number 9. Turner v. Butter, 253 Mo. 202; Byrne v. Byrne, 250 Mo. 632; Wendling v. Bowden, 252 Mo. 647; Carlson v. Lafgren, 250 Mo. 527; Lefever v. Stephenson, 193 S. W. 840; Coon v. Higgins, 235 S. W. 807. (5) There was sufficient evidence to warrant the court in submitting the issue of testamentary capacity. Gott v. Dennis, 246 S. W. 218; Carroll v. Murphy, 241 S. W. 642; Holton v. Cochran, 208 Mo. 314, 422; Lindsey v. Stephens, 229 Mo. 600; Goodfellow v. Shannon, 197 Mo. 271; Bensbing v. Washington Univ., 251 Mo. 641; Crum v. Crum, 231 Mo. 638; Holton v. Cochran, 208 Mo. 314; Meier v. Buchter, 197 Mo. 68. (6)

On the whole record the verdict was for the right parties and should stand. R. S. 1919, secs. 1513, 1550, 1551.

RAILEY, C.—After having carefully read all the evidence in the case, and the respective briefs filed herein, we have reached the conclusion that there was substantial evidence, offered upon the part of both plaintiffs and defendants, relating to the issues of undue influence and mental incapacity. We are of the opinion that the statement of the case by respondent's counsel is a fair presentation of the facts, and it is hereby adopted, as follows:

This suit was filed in the Circuit Court of St. Louis County, Missouri, on April 7, 1920, to set aside the alleged will of Francis P. Wilkinson, a resident of St. Louis County, who died on the 8th day of September, 1919, said purported will having been previously probated in the probate court. The plaintiffs are the children of a sister of the deceased, and the only living collateral heirs of deceased, and the defendants are all of the devisees and legatees named in the will. The paper, purporting to be the joint will of Francis P. Wilkinson and of Ellen Wilkinson, his wife, was alleged to have been made on the 18th day of August, 1919, and on the 28th day of August, 1919, Ellen Wilkinson died, her husband dying ten days later. The chief beneficiary in the purported will was Arthur Mittelberg, who for a number of years prior thereto had been the chief business adviser and friend of the deceased, having handled their business and finances from 1909 until the time of his death. The deceased, Francis P. Wilkinson, was at the time of his death about ninety-four years of age. His wife was somewhat younger. They had had one child, which, however, had died in infancy, and there were, therefore, no direct descendants of the deceased. The other defendants, aside from Arthur Mittelberg, who were named in the alleged will, were neighbors of the deceased and two charitable institutions, one a Protestant and the other a Catholic in-

stitution. The trial resulted in the finding by the jury
that the paper offered as the will of the deceased was not
in fact his will, and an appeal has been taken from the
judgment entered on said verdict only by the defendant
Mittelberg, the other defendants not joining in this ap-
peal.

The deceased was, at the time of his death and for
several months prior thereto, afflicted with a complication
of diseases and ailments such as chronic nephritis, and
the resultant uraemic poisoning of his system, arterio-
sclerosis and senile debility. In May, 1919, the defend-
ant Mittelberg, who had for some months been a con-
stant visitor at the home of deceased, caused Dr. O. L.
Wolter, one of the witnesses to the will, to call on the
old people and to treat them. The doctor continued
treating them during the whole course of their last sick-
ness and until they died, and from about the 10th day
of August, 1919, called at their home twice each day.
Dr. Wolter had not before known the deceased or his
wife, but went there at the instance and request of Mit-
telberg, who says he called Dr. Wolter, whom he was well
acquainted with, because he thought the Doctor might
be interested in old people of their age. Prior thereto
the old couple had been waited upon by a physician in
the community where they lived. Dr. Wolter found the
deceased in May, 1919, upon his first visit, suffering from
the diseases mentioned and in a semiconscious condition.
The wife, Mrs. Ellen Wilkinson, was not ill at the time.
The doctor treated the deceased, Francis P. Wilkinson,
and later in June treated him again; and his treatments
were practically continuous from that time until the
death of both of them. The diseases from which the de-
ceased was suffering were progressive in their nature
and deceased gradually grew worse until his death. Dr.
Wolter testified that deceased responded occasionally to
the treatment which he prescribed and that during the
whole month of August, 1919, was in possession of his
mental faculties, although weak and wasted away through

the progressive action of the diseases from which the deceased was suffering.

About the first week in August, 1919, the defendant Mittelberg caused his office associate, one Spencer Tompkins, who was a lawyer, but not engaged in the active practice at that time, to visit the old people for the purpose of getting data for the preparation of their wills. Some time prior thereto, the defendant Mittelberg claimed that the old people had spoken to him about their wills and he had advised them to make no will, but to have their farm, lying on Laclede Road just south of Webster Groves, which was then in the name of Francis P. Wilkinson, to be transferred to a third party and by him transferred to Francis P. Wilkinson and Ellen Wilkinson, his wife, by the entireties, and that this action was preferable to a will because the real estate, which was claimed comprised the bulk of the estate, would pass to the survivor without administration. The real estate was handled in this manner, but it appears to have been determined later, either by Mittelberg or by the old people themselves, that a will should be made. Tompkins was therefore called to the home by Mittelberg, and claims to have taken data for the preparation of the will, and later returned with a draft thereof, and he called a third time on August 18, 1919. On that date the defendant Mittelberg had caused his daughter, Aurelia Heimbuecher, to be installed in the home permanently and she remained there, thereafter, until the death of the old couple. For that purpose she had left her employment at a St. Louis department store. The physician, the scrivener, and Mrs. Aurelia Heimbuecher, daughter of the defendant Mittelberg, were witnesses to the will. The names of the testators were signed to the will by the scrivener, neither of them being able to hold the pen or to sign their names, although both had previously been able to write a good legible hand. The cross-marks on the paper were claimed to have been made by the deceased and his wife in the presence of the witnesses.

Mrs. Lizzie Jansen was employed by the old people as housekeeper and to take care of them, and came to the home at the request of Mrs. Wilkinson on the 16th day of July, 1919, and remained there until the death of Francis P. Wilkinson. The other neighbors, Mrs. Krueger, Mrs. Staas, Mr. Staas and their son, and Mr. and Mrs. Erb, all living in the immediate vicinity of the home of deceased, were in the home at frequent intervals during the last illness of the Wilkinsons. Mrs. Jansen, Mrs. Krueger and Mr. and Mrs. Staas, all of whom had an opportunity to observe the condition of Francis P. Wilkinson on the 18th day of August and prior and subsequently thereto, testified that on that date both of the old people were lying in an unconscious condition and were incapable of understanding or knowing what was going on about them. Mrs. Heimbuecher testified that on the date the paper was signed Mr. and Mrs. Wilkinson were occupying the same room, but she had previously testified in the hearing in the probate court that on that date they had occupied separate rooms. The testimony of Dr. Wolter indicated that the maladies from which the deceased, Francis P. Wilkinson, was suffering, were of a progressive nature, and that about the first or second week in August he developed a carbuncle, which later proved one of the contributing causes of his death, which had reached a point where it was necessary to open and drain the same on the 19th day of August. His testimony also was that his patient was suffering from uraemic poisoning, causing a toxic condition of the blood which, from time to time as the diseases progressed, rendered the patient unconscious, at other times semi-comatose, and the neighbors who had occasion to come in contact with him as early as May and June, 1919, and frequently right up to the time when the will is said to have been signed, testified that he was flighty and was unable to grasp what was going on about him. The testimony of witnesses on both sides indicated that he had wasted in flesh until he was easily handled by Mrs. Jan-

sen, and that he weighed according to some of the witnesses little more than fifty or sixty pounds at the time he died. Other witnesses, including Dr. Wolter, testified that his weight was probably around one hundred to one hundred and ten pounds.

Plaintiff Mary Ehrlich, a niece of deceased, was on friendly terms with her uncle, and had several letters from him in his own handwriting, the last of which was received in 1917. She was not informed of the death of her uncle, and shortly after he died moved from California to Detroit, Michigan, and addressed a letter to her uncle, which was placed by the mail carrier in the box of Mrs. Krueger, a neighbor, the same having reached its destination after the death of the old couple. These letters were exhibited in evidence, together with photographs of the deceased, and the original of all of these exhibits, in lieu of reproducing, are, by stipulation, filed in this court for examination. The paper claimed to be the will of the deceased was introduced in evidence by the proponents of the will and contained a statement that the deceased had no child or descendants of a child to be remembered in his will, and Dr. Wolter, testifying for proponents, stated that Mrs. Wilkinson had told him she had lost a little child when she was young and had not had any children since that time, and Mrs. Ehrlich testified that the Wilkinsons had had two children in their early married life, but that they had died very young, as babies. The brothers and sisters of the deceased at the time of the trial were all dead, and only one of them, excepting the mother of the plaintiffs, had had any children; a sister, Susanna, having had one child, which died as a baby. Plaintiff's mother, a sister of deceased, had had seven children, four of whom had died, leaving the plaintiffs the only living relatives of the deceased, Francis P. Wilkinson, at his death.

The grounds of contest were a denial of the execution of the paper offered as the will of the deceased, lack of testamentary capacity and undue influence on the part

of the defendant Mittelberg and persons under his control and acting for him.

On February 3, 1921, the jury returned the following verdict:

"We, the jury, find the issues in favor of the plaintiffs, and find that the instrument of writing dated August 18, 1919, produced as the last will and testament of Francis P. Wilkinson, deceased, and here in question, is not the last will and testament of said Francis P. Wilkinson, deceased."

Judgment was entered in due form on said verdict. Motions for a new trial and in arrest of judgment were filed and overruled, and defendant Arthur Mittelberg alone appealed from said judgment to this court.

The instructions and rulings of the court, as far as necessary, will be considered in the opinion.

I. In the motion in arrest of judgment, and under proposition one of his "Points and Authorities," appellant, Arthur Mittelberg, challenges the sufficiency of respondent's petition, and insists that

Defective Petition:
Right to Sue:
Interest in Estate.

they have no right to maintain this action. Under this proposition, we are referred to the following Missouri cases which, it is claimed, sustain the above contention, to-wit: State ex rel. v. McQuillin, 246 Mo. 674; Gruender v. Frank, 267 Mo. 713; Hahn v. Hammerstein, 272 Mo. 248; Chandler v. Railroad, 251 Mo. 592.

In construing the above, as well as the other authorities cited under this head, it is important that we should have before us Section 525, Revised Statutes 1919, which reads as follows:

"If any person interested in the probate of any will shall appear within one year after the date of the probate or rejection thereof, and, by petition to the circuit court of the county, contest the validity of the will, or pray to have a will proved which has been rejected, an

issue shall be made up whether the writing produced be the will of the testator or not, which shall be tried by a jury, or if neither party require a jury, by the court.''

In State ex rel. v. McQuillin, 246 Mo. 674, supra, Rosa E. Damon, as plaintiff, commenced an action to contest the will of her brother, Louis P. Ewald. Her petition alleged that testator instituted proceedings in Jefferson County, Kentucky, to adopt three children, which culminated in an order making said children the adopted children of testator. In this collateral proceeding, she undertook to eliminate the adopted children by attacking the proceedings under which they were adopted. She dismissed this case, and renewed said action, by an amended petition containing the same allegations. The court, on motion, struck out the amended petition, and a writ of mandamus was applied for here, to compel the circuit court to re-instate said action, etc. The court held, in passing on the case, that a will contest commenced by a party who had no interest in the subject-matter of the litigation within the purview of Section 525 supra, might be dismissed. The court disposed of the real question involved here, upon pages 692-3, as follows:

''The original petition of Rosa E. Damon showed that she could have no interest in the estate unless the adoption could be set aside. It does not appear that any steps were taken or intended to be taken to set aside said adoption other than her prayer in the petition. Obviously the Circuit Court of the City of St. Louis could not set aside that adoption, and it is equally clear that until set aside she could have no possible interest in the estate. Had she alleged in her petition that the adoption was invalid, and that steps had been instituted in Kentucky, or even that they were about to be instituted, to set aside such adoption, and had she asked that the will contest be stayed until such proceedings should have come to an end, a different question would have been presented, because if proceedings were instituted in

Kentucky to vacate the adoption they might not come to an end until the Statute of Limitations had run against the contest. We do not mean to say that she could not have framed a petition that would have preserved her alleged rights until the adoption question should be settled, but there was nothing in the petition filed to suggest such course. It appeared upon the face of the petition that the plaintiff had no interest in the estate. It is conceded upon the record that the petition filed by Rosa E. Damon to contest this will was insufficient in this respect. A demurrer upon the ground that she had no interest was sustained. She confessed the demurrer, and filed a memorandum dismissing the case at her costs. The court entered such dismissal. This left the way open for other proceedings in contest, but none were instituted within the statutory period of two years."

The ruling in above case, has no bearing on the question at issue here.

In our opinion, the case of Gruender v. Frank, 267 Mo. 713, is without the slightest application to the question before us, for it is obvious from reading same that the body of the petition did not allege any facts tending to show that plaintiffs were the heirs of testator. On page 721, the court, in disposing of the case, said: "The body of the petition does not allege facts that would show that plaintiffs were the heirs of the deceased testator, but gives the names of four persons (other than plaintiffs) who are alleged to have been the heirs of the testator. . . . It is sufficient to say that proper practice would require that matters of this kind be set forth in the body of the petition. [Sec. 1794, R. S. 1909.] Since the case must be remanded, however, plaintiffs will have an opportunity to amend their petition and thereby avoid the point upon a re-trial of the cause."

In Hahn v. Hammerstein, 272 Mo. 253 and following, plaintiff commenced an action to contest the will of his father, who had only left him one dollar. On page 256, the court said: "One of the vital questions in this

case is whether plaintiff is the child of Joseph Ehreiser, born after lawful wedlock between him and Johanna Hahn, the mother of plaintiff." On pages 257-8, the court further observed: "It follows that the case for plaintiff, as to his financial interest in the setting aside of the present will, depends solely upon proof by him of his status as a legitimate son and heir at law of Joseph Ehreiser, and unless the record contains substantial evidence sustaining the claim of plaintiff on that preliminary inquiry, he had no authority to institute this action."

The will had been set aside in the lower court, but this court reversed the cause, and held there was no substantial evidence warranting the jury in setting aside the will, which gave plaintiff one dollar. The most casual reading of the above case will indicate that it has no bearing on the question before us.

In Chandler v. Railroad, 251 Mo. 592, plaintiff, a widow, on April 1, 1908, commenced an action for the death of her husband who was killed on June 24, 1907. In other words, the suit was brought nine months and seven days after the death of her husband. The petition was silent as to whether there were any minor children, but the evidence disclosed that there were three in existence. Under the above circumstances, the widow had to sue, if at all, within six months of the death. Her right to sue thereafter, for the next six months, was dependent on there being no minor children. It was held, as in other cases of a similar character, that the petition, in order to pass muster, must allege, and the evidence must show affirmatively, the jurisdictional facts in order to sustain a recovery. The proof disclosed that there were three minor children in existence and, hence, the plaintiff's cause of action only existed for six months after the death of her husband. Counsel for plaintiff, realizing the difficulties which confronted them in respect to foregoing matter, tendered in this court an amendment to the effect that the widow appropriated the cause

of action within six months of her husband's death, and that thereafter, having suffered a nonsuit, she instituted a new suit within the year prescribed by Section 5429, Revised Statutes 1909. LAMM, J., on page 602 of above case, in disposing of the proposed amendment, said: "If a material allegation is absent from the petition, as here, and the proof thereon is absent, as here, it would be a startling innovation for us to allow an amendment and to proceed to judgment, in the absence of proof sent here in the ancient way, to-wit, in an abstract of the record. I think no precedent can be found for that course and the absence of precedent is due, doubtless, to the lack of meritorious substance in such a dangerous novelty." The court, however, reversed and remanded the cause, so that plaintiff might amend her petition. It is evident that, if the missing facts had been present, as a part of the case, as they are here, the court would have treated the petition as amended, and disposed of the case accordingly, as we shall hereafter show.

Reverting to the petition herein, we find that it contains the following allegations:

"Plaintiffs state that said Ellen Wilkinson died on or about the 29th day of August, 1919, and before the death of said Francis P. Wilkinson; that at the time of his death said Francis P. Wilkinson owned and was in possession of real and personal property in the County of St. Louis, Missouri, of about the value of fifty thousand dollars, and that the plaintiffs are all of the heirs of said Francis P. Wilkinson deceased, and that the defendants are all of the devisees and legatees under the said paper writing purporting to be the last will and testament of said Francis P. Wilkinson, deceased; and that no one other than plaintiffs and defendants has any interest in such estate, and this action is filed within two years after the death of said Francis P. Wilkinson.

"That plaintiffs are the only children of Josephine Wilkinson Wilde, deceased, and that said Josephine Wilkinson Wilde was a sister of said Francis P. Wilkinson.

deceased; and that said Francis P. Wilkinson left no other brothers or sisters, or descendants of such brothers and sisters.''

The will is set out as a part of said petition, and contains the following: ''And having no child or descendants of a child to be remembered in our will, we, therefore, jointly dispose of our estate as follows.''

From the foregoing allegations, it is evident that an issue was attempted to be tendered in the petition, to the effect, ''that no one other than plaintiffs and defendants has any interest in such estate.'' The will was introduced in evidence by defendants containing the above allegation in regard to there being no children. The scrivener who wrote the will testified that ''I put it into the will just the way they told me.'' Doctor Wolter testified that Mrs. Wilkinson had told him that ''she had lost a little child while she was young and had not had any children since that time.'' Mary Ehrlich, one of the plaintiffs, testified that Mr. Wilkinson told her that they had two children in their early life, and that both of them had died as babies. Dr. Wolter also testified that Mr. Wilkinson said to him ''that they had a few relations somewhere, distant relations, but he said they were not concerned about them, because they were never concerned about the Wilkinsons.''

The above testimony of the scrivener, Dr. Wolter and Mary Ehrlich went in without objection. The sufficiency of the petition was not challenged by motion, demurrer or otherwise. The case was tried upon the theory, up to the return of the verdict, that the petition stated a cause of action, and the evidence aforesaid was admitted thereunder without objection. Under the circumstances aforesaid, the appellant is in no position, after verdict, to attack the petition on the ground that it contained simply legal conclusions, etc. [Sec. 1550, R. S. 1919; Simpson v. Wells, 237 S. W. (Mo.) 526 and cases cited; Machinery Co. v. Bottling Co., 273 Mo. l. c. 149, 200 S. W. 1079; Tebeau v. Ridge, 261 Mo. l. c. 559,

170 S. W. 871; Winn v. Railroad, 245 Mo. l. c. 412, 151
S. W. 98; Lange v. A. B. B. Assn., 241 S. W. (Mo.)
l. c. 456.]

(a)  Aside from the foregoing, the facts which ap-
pellant insists should-have been alleged in petition, were
proven without objection, and stood unchallenged at
the trial.  Under such circumstances, it would not be
proper for this court to treat the petition as void, even
if it defectively stated a cause of action attemped to be
pleaded therein.  On the contrary, as respondents would
have been entitled in the trial court to amend their pe-
tition to correspond with the facts proven, we will treat
the petition here as having been properly amended. [Dar-
rier v. Darrier, 58 Mo. l. c. 233-4; Baker v. Railroad, 122
Mo. l. c. 547-8; Tebeau v. Ridge, 261 Mo. l. c. 559; State
ex inf. v. Clardy, 267 Mo. l. c. 381, 185 S. W. l. c. 187;
Morton v. Lloyd Const. Co., 280 Mo. l. c. 376, 217 S. W.
l. c. 834.]

In view of the foregoing, the trial court committed
no error in overruling the motion in arrest of judgment.
The above assignment of error is accordingly overruled.

II.  As all the devisees and legatees were joined
as defendants in this action, it was not necessary that
other parties should be joined as plaintiffs who might
be interested in the estate, should the will be
set aside.  [Sec. 525, R. S. 1919; Kischman v.
Scott, 166 Mo. l. c. 224-5.]

Parties.

III.  Appellant complains of Instruction 7, given
at the instance of plaintiffs, which reads as follows:

"The court instructs the jury that if they believe
and find from the evidence that said Francis P. Wilkin-
son was, at the time of the execution of the paper writ-
ing offered in evidence as his last will and
testament, if you find he did execute the
same, afflicted with the diseases of chronic
nephritis, uraemic poisoning, arterio-sclerosis, senile
debility, and carbuncleosis, and so completely prostrated

Testamentary
Capacity.

in body and mind by the wasting effects of said diseases as to be unable to understand the business in which he was then engaged, then the jury is instructed to find that he was not of sound and disposing mind.''

While this form of instruction is not to be commended, yet we cannot see how appellant, in view of the undisputed facts, has been injured thereby. The court did not express its opinion on any of the matters referred to in said instruction. In legal effect, the court simply said to the jury that if they believed from the evidence that testator was afflicted, as indicated in said instruction, and so prostrated therefrom as to be unable to understand the business in which he was then engaged, they should find that he was not of a sound and disposing mind. The undisputed testimony of Dr. Wolter, who was one of the principal witnesses for defendants, gave it as his opinion, in substance, that testator was afflicted as indicated in said instruction. The court, however, did not assume the testimony of Dr. Wolter to be true, but left it to the jury to determine the facts in relation to said matters.

Aside from the foregoing, we are of the opinion that appellant is in no position to complain of the above instruction, because the defendants asked, and induced the court to give, Instruction 2, along the same lines, which reads as follows:

''The court instructs the jury that in determining the question whether or not Francis Wilkinson possessed testamentary capacity, that is, whether or not he was of sound mind, as that term is used in reference to the capacity to make a will, on August 18, 1919, the date when he is alleged to have executed the paper produced as his last will, if you find from the evidence in the case that Francis Wilkinson at the said time had sufficient understanding and intelligence to comprehend the nature of the transaction in which he was engaged, the nature and extent of his property, and to whom he desired to give it and was giving it, without the aid of any other person,

then the court instructs you that he was possessed of sufficient mental capacity or soundness of mind to make a will. *And in this connection you are instructed that old age, physical weakness or imperfect memory caused by old age or sickness, will not be sufficient to establish incompetency or to invalidate the will if he had sufficient intelligence remaining to fulfill the above definition of soundness of mind.''* (Italics ours.)

Section 1513, Revised Statutes 1919, reads as follows:

''The Supreme Court, or Courts of Appeals, shall not reverse the judgment of any court, unless it shall believe that error was committed by such court against the appellant or plaintiff in error, and materially affecting the merits of the action.''

We are of the opinion, that no error was committed in the giving of said Instruction 7 materially affecting the merits of the action. The above assignment is accordingly overruled.

IV.   Appellant assigns as error the giving of Instruction 9, on behalf of respondents, which reads as follows:

''The jury is instructed that if you believe and find from the evidence that there existed between defendant Arthur Mittelberg and Francis P. Wilkinson a confidential relationship, as defined in another instruction herein, and that said Arthur Mittelberg is named as a principal beneficiary in said paper writing offered in evidence as the last will and testament of said Francis P. Wilkinson, and that at the time said paper writing was signed by said Francis P. Wilkinson, if you find he did sign the same, said defendant Arthur Mittelberg was the confidential friend and advisor of said Francis P. Wilkinson, as defined in another instruction herein, then, and in that case, the law presumes, unless such presumption is overthrown by the evidence, that defendant Arthur Mittelberg exerted an undue influence over said Francis P. Wilkinson in connection with the

*Undue Influence: Presumption: Confidential Relation.*

signing of said instrument, and that the signing of the same by said Francis P. Wilkinson, if you find he did sign said instrument, was the result of such undue influence; and, in such case, the jury will find the issues herein joined for the plaintiffs, and that the said instrument is not the last will and testament of said Francis P. Wilkinson, unless you further believe and find from all the evidence in the case that the said instrument was executed by Francis P. Wilkinson as his own free will and deed, and not as the result of any undue influence exercised over him by defendant, Arthur Mittelberg.''

It is claimed that there was not sufficient evidence to establish a confidential relationship between the appellant, Arthur Mittelberg, and Francis P. Wilkinson. We have set out the evidence very fully heretofore, which speaks for itself. We are of the opinion that there was abundant substantial testimony on which to submit said issue. In addition to the foregoing, the jury had the right to consider the recitals and terms of the will in passing on this question. They read as follows:

''2nd. As partial compensation for services heretofore rendered us we give and bequeath unto our friend, Arthur Mittelberg, all evidences of debt and promissory notes owned by us, or made payable to either of us, together with all money and cash on hand which may remain after payment of our funeral expenses.

''3rd. In consideration of the absolute confidence reposed in Arthur Mittelberg and of his many years of constant care and unrequited attention given to conducting all of our business affairs, we do hereby give, devise and bequeath unto him, said Arthur Mittelberg as trustee, all the said described real estate, with full power to sell and convey the same in manner and form as his own good judgment may dictate; and he shall have the right to subdivide said premises into lots or small parcels at his discretion, and to sell the same in parcels or as a whole at public or private sale, as he may deem best; and from said real estate or the proceeds of the sale thereof he shall make payments as follows: . . .

"All the remainder of said real estate, or proceeds of the sale thereof, shall be divided as follows: One-fourth to St. Louis Presbyterian Orphan Asylum at Webster Groves, and one-fourth to the association known as the Little Sisters of the Poor and Aged in St. Louis, Missouri, at 22nd and Herbert Streets, and one-half thereof to the said Arthur Mittelberg; and in case said parties may desire to retain their said portions of said land without a sale thereof, then said Arthur Mittelberg shall have the right to first select his one-half of said land, and title thereto shall vest in fee simple in him, his heirs and assigns forever, and he shall partition and convey to each of said associations the portion of said land as above devised to them.

"4th. We hereby nominate and appoint Arthur Mittelberg of St. Louis County, Missouri, our executor of this our last will and testament, to act as such without bond, hereby breaking all former wills by us, or either of us, heretofore made."

We hold that the court committed no error in giving the above instruction. [Canty v. Halpin, 294 Mo. 96, 118, and cases cited; Burton v. Holman, 288 Mo. 1. c. 75-6; Sittig v. Kersting, 284 Mo. 167; Kuehn v. Ritter, 233 S. W. (Mo.) 1. c. 7; Coldwell v. Coldwell, 228 S. W. (Mo.) 1. c. 102 and following; Kleinlein v. Krauss, 209 S. W. (Mo.) 933.]

The above assignment of error is without merit and overruled.

V. It is suggested under appellant's "Points and Authorities" that Instruction 10, given in behalf of respondents on the subject of undue influence, should have been refused, for lack of evidence on which to base it. The above contention is disposed of in what we have said in the last preceding paragraph, and is overruled.

VI. The court is charged with error in overruling defendants' demurrer to the evidence at the conclusion of plaintiff's case. Where a demurrer to plaintiff's evi-

dence is overruled, and defendant places be-
**Demurrer to** fore the jury his own evidence, he waives his
**Evidence:**
**Waiver.** right to review the action of the court in over-
ruling such demurrer, as it then becomes the
duty of the jury to pass upon all the facts in the case.
[State v. Hembree, 291 Mo. 1; State v. Barker, 294 Mo.
303, 242 S. W. l. c. 409; State v. Wilson, 237 S. W. l.
c. 778; Simpson v. Wells, 292 Mo. 301, 237 S. W. l. c. 523
and numerous cases cited; Burton v. Holman, 288 Mo.
78; State v. Mann, 217 S. W. l. c. 69; Lareau v. Lareau,
208 S. W. 241.]

In the Lareau Case, we overruled the above conten-
tion in a will contest, and made a similar ruling in Bur-
ton v. Holman, 288 Mo., l. c. 78.

VII. Upon a careful examination of the record, we
have reached the conclusion, that the trial court commit-
ted no error of which appellant can legally complain, in
passing upon the objections to the expert tes-
**Expert**
**Testimony.** timony offered at the trial. The assignments
of error upon this point in appellant's brief
are overruled.

VIII. It is finally contended by appellant that the
trial court committed error in overruling defendants'
demurrer to the evidence at the conclusion of the whole
case. It would serve no good purpose to review the evi-
dence on this question heretofore set out. After reading
the record and briefs the second time, we are satisfied
that the case was well tried, and ably contested upon
both sides. There was substantial evidence before the
jury, both as to the subject of undue influence and lack
of mental capacity upon the part of testator to make the
will in controversy. There is nothing in the record to
indicate that defendants did not have a fair and impar-
tial trial before both court and jury.

The judgment below is accordingly affirmed. *Hig-
bee, C.,* concurs.

PER CURIAM:—The foregoing opinion of RAILEY,
C., is hereby adopted as the opinion of the court. All
of the judges concur.